**SATHERS INC., a Delaware Corporation, Plaintiff,**

v.

**CARAVAN CANDY CO., a West Virginia Corporation, Defendant.**

**No. C–C–88–449–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 3, 1989.

John L. Sullivan and John H. Thomas, Bell, Seltzer, Park & Gibson, Charlotte, N.C., and Eugene L. Johnson and Janet L. Boche, Dorsey & Whitney, Minneapolis, Minn., for plaintiff.

W. Thad Adams, III, Charlotte, N.C., for defendant.

## PRELIMINARY INJUNCTION

McMILLAN, District Judge.

On October 19, 1988, plaintiff moved that the court issue a temporary restraining order and an order to show cause for a preliminary injunction pursuant to Fed.R. Civ.P. 65(b). The motion was heard on November 1, 1988, at 2:00 P.M. The defendant appeared at the hearing to present evidence and stipulated that plaintiff's motion should be treated as a motion for preliminary injunction under Fed.R.Civ.P. 65(a).

In its verified complaint, filed October 3, 1988, plaintiff Sathers Inc. ("Sathers") alleges that defendant Caravan Candy Co. ("Caravan") is packaging and selling candy in a transparent bag with a closure label identical to the closure label used by Sathers, in violation of the Lanham Act (the Trademark Act of 1946), 15 U.S.C. §§ 1051–1127 (1982 & Supp.1986), and North Carolina common law. Plaintiff now seeks to enjoin defendant from using the alleged "infringing" label or any other "confusingly" similar trade dress during the pendency of this suit.

## FINDINGS OF FACT

Plaintiff Sathers, a Delaware corporation, is a national distributor and manufacturer of candy products. Verified Complaint para. 1. Sathers typically packages and resells candy manufactured by other companies in a transparent bag with a red and yellow closure label characterized by certain design features. Verified Complaint para. 6; Pl. Exs. 1A–9A. An example of plaintiff's label is attached. Pl.Ex. 2A. Sathers also manufactures its own candy products which it packages and sells using this label. Verified Complaint para. 6.

Sathers has advertised, distributed and sold candy products throughout the continental United States, using its label for at least ten years. *Id.* Sathers' revenue from candy sold using this label amounts to hundreds of millions of dollars. *Id.*

Defendant Caravan, a West Virginia corporation, also packages and distributes candy products manufactured by other companies. Verified Complaint para. 13; Affidavit of Morgan Campbell para. 2. In the past, Sathers hired Caravan to pack some candy products for Sathers using the Sathers label. Verified Complaint para. 13. As a result of that work, defendant was familiar with and had access to Sathers label. *Id.*

Defendant has offered for sale and sold in this district candy products packaged with a closure label identical to the Sathers label, except for the substitution of the name "Caravan" for the name "Sathers," the use of a different name for the same candy product and/or printing the name in a different type style, and a different printed net weight of the same candy product. Pl. Exs. 1B–9B; Affidavit of L. Grace Mercer. An example of defendant's label is attached. Pl.Ex. 2B.

A careful examination of the attached examples reveals that a mistake in the Sathers label is duplicated in the Caravan label. The numeral "8" in the copy "SAVE 18¢ ON TWO" is upside down in both labels. This common error strongly supports plaintiff's contention that defendant intentionally copied plaintiff's label. When questioned by the court about the common error during the November 1 hearing, defendant's counsel did not reply directly, but pointed out that this action does not involve a copyright claim; that is, that it would not be illegal if defendant had copied plaintiff's label. The court finds, on the present state of the record, that defendant intentionally copied plaintiff's label.

Although the labels are in many ways identical, there is a difference in the

amount of candy the consumer receives from plaintiff and defendant for the printed price of fifty-nine cents. In eight of nine products submitted to the court, the consumer receives less candy, according to the net weight printed on the labels, from defendant Caravan. Pl. Exs. 1A–9A, 1B–9B. The difference ranges from fifteen to thirty-four percent less candy in the Caravan package than in the corresponding Sathers package. The one exception, the "Tootsie Pops" product, is anomalous for another reason. Pl. Exs. 6A, 6B. The court's curiosity was aroused when visual inspection of these exhibits revealed that the Sathers' package contains five suckers while the Caravan package contains only four suckers. A literal "weighing of the evidence" on a scale by the court revealed that, although the Caravan package is supposed to contain two and one-quarter ounces to Sathers' two ounces, the Sathers' package in fact contains more candy by weight.

Defendant introduced evidence that candy distributors other than plaintiff use red and yellow closure labels, although there was no evidence of the extent to which the other labels are used. Def. Exs. 12–16. Defendant also introduced evidence that other consumer products, such as rawhide chew bones for dogs, are sold with red and yellow closure labels. Def. Exs. 3–5. However, after receiving notice of this suit, defendant stopped using labels like those in Pls. Exs. 1B–9B. Affidavit of Morgan Campbell para. 7. Defendant is using a new label, which is attached. Pl.Ex. 10. The new label differs from the Sathers label in several ways, including a change in color from red to pink.

## CONCLUSIONS OF LAW

The trial court standard in the Fourth Circuit for issuing a preliminary injunction under Fed.R.Civ.P. 65(a) is the "balance-of-hardship" test. *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189, 196 (4th Cir.1977). The first step in applying this test is "to balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *Id.* at 195.

The "irreparable" harm requirement must be evaluated within the context of the balance-of-hardship test. Within that context, "irreparability" is not simply a minimum of probable injury, but is influenced by the "relative quantum and quality of plaintiff's harm." *Id.* at 196. Where issuing the injunction will cause very little harm to defendant, the court is more apt to find irreparable harm to the plaintiff. *Id.*

■ Injury to good will or reputation is considered to be irreparable. *Id.* at 197; *Omega Importing Corp. v. Petri–Kine Camera Company*, 451 F.2d 1190, 1195 (2d Cir.1971) (irreparable injury may be inflicted on plaintiff's reputation in the market if infringer's product is "simply not worth the price"). In this case, defendant Caravan copied plaintiff's label and sold less candy for the same price. Thus, plaintiff is exposed to the possibility of irreparable injury.

Enjoining defendant from using the copied label imposes no harm because defendant has stopped using the label. Even if defendant had continued to use the copied label, an injunction would result in a loss of sales which could be adequately compensated for by requiring plaintiff to post a bond. Therefore, the court concludes that the balance of hardship, with respect to enjoining the copied label, tilts in plaintiff's favor.

■ When the balance of hardship appears to be in plaintiff's favor, the injunction should issue if the plaintiff has raised "serious" questions which are "fair ground for litigation." *Blackwelder*, 550 F.2d at 195. The court concludes that plaintiff has raised serious questions in its complaint.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), does not apply exclusively to the infringement of registered trademarks. The statute protects against certain deceptive practices whether or not a trademark is involved. *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 448 (4th Cir.1986). "To enjoin a competitor's use of a particular trade dress, a plaintiff must show two things: that his own trade dress

has acquired a secondary meaning and that there is a likelihood that the defendant's use of that trade dress will confuse the public." *Id.* at 448–49.

The court has found that defendant Caravan intentionally copied plaintiff's trade dress. The Fourth Circuit in *Kramer* expressly held that evidence of intentional copying of plaintiff's trade dress establishes a *prima facie* case of secondary meaning and shifts the burden of persuasion on that issue to the defendant. *Id.* at 448. The *Kramer* court also noted, without deciding, that a leading commentator states that the courts almost unanimously presume a likelihood of confusion based upon a showing of intentional copying. *Id.* at 448 n. 24. Thus, with the benefit of one or both presumptions, plaintiff certainly has raised questions which are fair ground for litigation.

■ Plaintiff also seeks to enjoin the use of defendant's new label and all other labels which are "confusingly similar" to the copied label. Evaluating the general question first, the court concludes that enjoining all "confusingly similar" labels would be a nullity because it would not be "specific in terms," nor "describe in reasonable detail ... the act or acts sought to be restrained," as required by Fed.R.Civ.P. 65(d). In using any new label, defendant and its agents would run the risk of being haled into court on a motion to impose sanctions for contempt, even though the question whether the label was confusingly similar would have to be decided contemporaneously with the motion for contempt.

The court will consider whether to enjoin the new label used by defendant. Given the design and color changes in defendant's new label, the public is less likely to confuse defendant's product with plaintiff's

product than when defendant used the copied label. Less confusion makes irreparable harm to plaintiff's reputation less likely. The defendant, while having no right to continue using copied trade dress during the pendency of this suit, is more likely to suffer harm if, after making some design changes, it is enjoined from using a label which employs another "similar" bright color like pink. Although the decision is less than crystal clear, the court concludes that the label has been changed enough to tilt the balance of harm in defendant's favor.

■ IT IS THEREFORE ORDERED that defendant Caravan Candy Company and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who have actual notice of this order are hereby enjoined during the pendency of this suit from using the label attached hereto and marked Pl.Ex. 2B.

IT IS FURTHER ORDERED that pending disposition of this suit, defendant and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who have actual notice of this order are hereby enjoined from removing, moving, destroying or otherwise disposing of in any manner business records or documents or other information embodied in a tangible, magnetic or any other form, relating in any way to the manufacture, acquisition, purchase, distribution or sale of goods bearing plaintiff's trademarks or trade dress.

IT IS FURTHER ORDERED that plaintiff give security acceptable to the clerk of this court in the sum of $25,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained by this order.

APPENDIX

Plaintiff's Exhibit No. 2A

**SAVE 18¢ ON TWO**

**SATHERS®**

**PIXY STIX®**

59¢ EACH

**SPECIAL 2 for $1.00**

NET WT. 1¼ OZ.

Plaintiff's Exhibit No. 2B

**SAVE 18¢ ON TWO**

**CARAVAN**

**PIXY STIX®**

59¢ EACH

**SPECIAL 2 for $1.00**

NET WT. 1 OZ.

1264

**No. 6.**
Fruit Acid, FD&C Yellow No. 5 and FD&C Yellow
Starch, Natural Flavors, U.S. Certified Color,
INGREDIENTS: Corn Syrup, Sugar, Corn

Packed by CARAVAN CANDY CO.    Princeton, WV 24740

SAVE 18¢    SPECIAL    2 for $1.00

CARAVAN

PARTY PACK

NET WT. 3¼ OZ.

SPECIAL
2 for $1.00
or
59¢ EACH